Argument not to exceed 15 minutes per side. Mr. Diedrich, you may proceed for the appellant. May it please the court, Joseph Diedrich for the appellant in Home Health. A hospice patient's Medicare eligibility turns on a prognosis about their life expectancy. Congress and CMS recognize that making a prognosis requires a qualified physician to exercise clinical judgment. Before the ALJ, In Home supported its prognoses with physician certifications and Dr. DeGrigori's expert testimony. The secretary, by contrast, chose not to participate at all. He submitted no evidence or argument and sent not even a lawyer, much less a doctor, to the hearing. The ALJ then strayed from his role as an independent adjudicator, producing an opinion that reads more like an expert physician report. He drew independent conclusions, lay conclusions, about the patient's life expectancies without relying on any evidence grounded in clinical judgment because there was none. In short, the ALJ played doctor and his decision cannot stand. Yet even if the ALJ were right about the merits, In Home should still get the benefit of Medicare's limitation on liability provision. In Home made its prognoses in good faith, and even the most specific Medicare guidance failed to put In Home on notice, clearly on notice, that the patients were not terminally ill. Do you think you might just turn to us to your best case of what the ALJ got wrong in denying coverage where you think, you know, the denial wasn't supported by substantial evidence? Sure. I'll start with patient number one. Sure. Great. And if we look at the ALJ, and this is consistent across his treatment of all of the beneficiaries for all benefit periods, what he starts with is a narrative summary of what I'll refer to as the raw medical data, things like FAST scores, weight, BMI, all of that kind of stuff. And then under a separate heading called analysis, he says, well, I'm going to take all of these pieces of raw medical data, and I'm going to draw a conclusion about whether I agree with the hospice or not that this shows that the patient was terminally ill. I think that shows that the ALJ was doing what Congress and CMS said requires clinical judgment. Because Dr. DeGregory, not to mention the hospice physicians initially, but then Dr. DeGregory for that same patient, looks at the same underlying data and says those patients were terminally ill. I mean, the ALJ is looking at the data provided by the doctors and the medical expertise and all that stuff and the people who measured arm circumference and weight and things like that, and he's matching it up at least to a standard that isn't completely controlling these local determinations, but looking at metrics like 10% decrease in body weight over six months or things like that. Isn't quite frankly that what judges do a lot, even in medical context? So I'm going to say no, but I want to explain my answer a little bit. So this is really analogous to cases like Goins and Simpson, where an ALJ is looking at MRI test results or lab test results or other things that, and I'll cite Curtiss too from the Third Circuit, where the ALJ is looking at the basic medical data, but there's no physician evidence to support what the ALJ is concluding from that medical data. And courts have not been shy about saying that the ALJ played doctor in those situations. As the Curtiss court said, in the absence of evidence from some medical expert, an ALJ's clinical inferences amount to nothing more than mere speculation. I don't want to leave the court with the impression, however, that any time the secretary chooses not to come and show up and produce its own evidence, that the hospice always wins. I know the secretary has made that argument. That is not true. Even when the secretary does not show up, the ALJ still retains substantial power to review these records and rule adversely to the hospice. So it sounds like you're saying, and I don't want to put words in your mouth, but it sounds like you're saying that the ALJ can only rely on evidence from doctors, period, and that they can't evaluate the objective medical evidence? Am I misunderstanding you? Well, in Goins, for example, an ALJ played doctor by summarizing the results of an MRI when a doctor did not previously do that. So to Bloom-Katz's point, if the ALJ is looking at the objective medical evidence and considering them in relation to what the LCD requires when you're looking at arm circumference and weight and those kinds of things, is that playing doctor? Are you saying that? Two points. So first of all, Congress and CMS, the LCD language itself, talks about how the analysis of the overall picture is not limited to just the examples of the specific things in the LCD. These are examples, but they are not exhaustive. And taking a look at the whole patient, it has to be a holistic analysis because it's not just a fast score of seven. It can also be things like diagnoses of pneumonia or a patient's ambulatory ability, things that really are more qualitative than quantitative. And so the LCD explicitly leaves open the notion that a physician can come in and reach conclusions that are not strictly limited to these lists. And that's what Dr. DeGregory did. And so at minimum, the ALJ had to explain why he was disagreeing with Dr. DeGregory. And he doesn't do that at any point. And so that's an independent basis. Even if you disagree with me on this whole play doctor thing, the ALJ had to explain why he was disagreeing with Dr. DeGregory, and he didn't do that. He didn't say that Dr. DeGregory was unqualified. He didn't say that Dr. DeGregory wasn't using credible methods. He really just disagreed with his conclusions. Is there something in the regs, like for instance in Social Security, there used to be, and it has changed, but there used to be this idea of controlling weight and like a treating physician receiving controlling weight. Is there anything analogous under Medicare for this hospice care? There is. It's not at the high level of generality like the controlling weight standard, which applied across the board, but there are hospice-specific regulations that do talk about the role that clinical judgment plays. And the ACERICARE Court from the 11th Circuit reviewed all of those regulations and said the following. CMS signals that well-founded clinical judgments be granted deference. And it cites 78 Federal Register 48247, among others. And we cite all of those citations in our brief when we're talking about ACERICARE. I wanted to return briefly to my earlier point about things that the ALJ can do even when the Secretary doesn't show up. This ALJ always has the power to issue subpoenas and examine witnesses. The ALJ did neither of those things here. The ALJ can exercise a gatekeeper role for expert testimony, say that the expert is not qualified, say that the testimony is not based on credible methods or facts in the record, say that there's material inconsistencies in an expert's testimony. Again, none of that happened here. Can I just want you to use all your time on the first issue? So there's a second issue as well. So I know you don't want to make this assumption, but assume we think you lose kind of on like the first prong, let's say, that we think that it was unreasonable. Then there's a second test. And I'm really having trouble understanding how we're supposed to apply this test. So you can still be allowed to get reimbursed if you did not know or your client did not know and could not have reasonably been expected to know that treatment should not have been covered by Medicare. So I understand how that works. And let's say like there's a device that your client uses and they say, you know, we didn't know that we couldn't use this device and get reimbursed for it, but there's like a reg on the books that expressly says you can't do it. So that's a pretty easy case, right? Or maybe there's no reg and it's really buried in the different materials and it doesn't quite speak directly to that device. So you can say, okay, in that case, you probably didn't know. Even though you shouldn't have used it, you probably didn't know. But this is not like a bright line case. You know, if you look at the act that we're supposed to look at in the LCD, it's like a multi-factor test if you want to put in like legal terms, right? There's all these different considerations that could apply here. So it feels to me like given you never know exactly how an ALJ is going to apply all these criteria because there's so many of them. But if that's the case, it seems like in every instance you would always qualify under the second prong because you would say there's a bunch of criteria. We don't know how they're going to be applied because it's not a bright line situation. So it's always possible we couldn't have reasonably understood how these criteria would be applied to our case. Sorry, that's kind of a long question. But I'm really having trouble understanding in a situation where it's, you know, not again a bright line like device question, how this works and how it doesn't always allow a client like yours to recover. A lot there, so let me try and unpack it starting with the legal standards. Start with the regulation that interprets the statute and says that it has to be clear that the hospice could have been expected to have known that the services were excluded. And so what that means here is there has to be some piece of guidance or some document that shows to us, the hospice, that it was clear that these patients weren't terminally ill. I don't think merely pointing out the LCD gets you there. But I understand that a large part of your question is the competing claims that the sides are making here. We say that under the ALJ's interpretation, nobody ever gets the benefit of the limitation on liability provision because we have to predict what the ALJ ultimately ruled. And that can't be what Congress meant when it gave hospices the ability to take advantage of this. It can't mean that you never win, but it can't mean that you always win. It also can't mean that you also win. So how do we hash this out? Are there any good cases to look at? There really aren't, unfortunately. So what I would say is there's no dispute in this case that the hospice here made certifications in good faith that were reasonable. The ALJ ultimately determined that they were not correct and that these patients were actually not terminally ill. But you could imagine situations where there was either not reasonable, like if you put me in hospice, for instance, clearly that's not reasonable, but even closer to the line, a FAST score of 7E, I believe, means you can't hold your head up straight. But if you admit a patient with a FAST score of 6, or excuse me, if you admit a patient with a FAST score of 7E, but then you also have notes saying she's up and walking around and she's doing great, that would also probably put a hospice on notice that they might not get paid. Same for documentation requirements. For example, after the third or later benefit period, you have to show a face-to-face encounter. If the hospice doesn't provide proof of that face-to-face encounter, they have no claim to a good faith reimbursement. Just trying to craft a test, is this the difference between negligence and recklessness? If they're just negligent, it's okay, but if they're reckless, they wouldn't be able to recover on the second prong? We have these qualified immunity cases, right, where you can violate the Constitution, but if it's not clearly established you can't do it, you recover? To begin, I don't think you actually have to answer that question in this case. You only have to apply it to the facts and determine that we were not negligent or reckless here. If you want to set forth a test... That's what court appeals tend to do. Understood. So I want to highlight the fact that recklessness or something like that probably does get closer, and I do want to highlight, if I briefly could, the fact that this is a hospice case where Congress and CMS have expressly incorporated the inexact science of prognosticating life expectancy into the standard for certifying and therefore into the standard for what's reasonable and in good faith. So the standard is harder to apply or may, quite frankly, favor hospice providers more than other types of providers. So yes, it may be the case that more hospices compared to curative treatment providers are able to take advantage of this limitation on liability, but I don't think you should run away from that because that is exactly what Congress anticipated when it extended this provision to hospices in 1997. That's documented in the legislative history. Can I ask you, and I don't think it's in the record, I apologize if it is, but does CMS put out alerts, guidance, things like that? Like, you know, you should be looking for these sorts of changes in particular scores and that's going to satisfy a standard? Or like, if arm circumference is going in, decreases by this much, this is going to help satisfy an LCD? Like, at least how the rule is written in terms of notice and communications, it kind of presumes that there's more than kind of the LCD in Part 1 and PART 2 and PART 3, and I just don't know the field enough to know how that works. So as far as I'm aware, the LCD is the most specific, and I believe that's why the Secretary relies on it in his briefing to say that that is what the hospice was on notice of. Keep in mind, that really is a post-hoc argument here. The ALJ didn't, like, say which document we were supposed to be relying on, but CMS does put out occasional publications that speak in more general terms, and one that I'd like to highlight is the provider education article, CMS Publication 60AB, which says there's no risk to a physician about certifying an individual for hospice care that he or she believes to be terminally ill. It is statements like these, as well as the others that we highlighted in our brief, that really show that hospice care, when it's done reasonably and in good faith, is something that tends to be different than curative treatment, and so doesn't fall into those prosentive injection cases, Judge Rita, that you were referencing earlier. But it doesn't mean that the limitation on liability should not apply, or that the standards should not take into account what we're doing here. We're making inherently uncertain prognostications about a type of care that, frankly, saves Medicare money in the long run because it is less expensive than curative treatment. If we think that the ALJ kind of applied too high of a standard on this limited liability point, is it appropriate for us to remand to the ALJ and let the ALJ take the first look at, to use your example, is there an inconsistency between what a nurse reported and what the score was, and therefore that's really not going to be reasonable, that's not in good faith to request payment for, or is that something that we should do? What is the remedy here? We'll take a win in any form, but let me take a crack at why you should reverse without remand. There's no dispute that you can do that, and in Mallory, this court laid out a number of different circumstances in which it's appropriate to reverse without remand. The one I want to focus on here is proof of entitlement to benefits is strong, and evidence to the contrary is lacking. And that applies to both the first determination of whether these patients were terminally ill, as well to the limitation on liability. Keep in mind, the secretary can always show up to the hearing, conduct discovery, examine witnesses, introduce his own witnesses, not only on the terminal illness question, but also on the what did the hospice know or should have known question. And the fact that the secretary elected to not do that here, frankly should be construed against him. In Kennedy against Estrue, you highlighted the fact that the commissioner didn't show up in that case, and you said that's a reason why we're going to reverse without remand. It sends a bad incentive to the government that it can choose not to show up for an ALJ hearing, and then get a second crack at it. And not to mention, there's a significant delay here. We're talking about patients that were treated in 2016, 2017. We're already 10 years later. It's time for the case to come to an end. Okay, it's also time for your argument, unfortunately, to end, but we will get a few minutes for rebuttal. Thank you very much. And we'll now hear from the government. Good morning. May it please the court. AUSA Brennan Barker for the United States. This court should affirm the district court's ruling because the ALJ's decision was thoughtful and considered going in both directions, and it easily clears the low substantial evidence bar. The hospice's argument that the ALJ had preferred conclusions or was using testimony to serve his purpose, that argument just does not make sense. The ALJ went both ways on this. He ruled for the hospice. He ruled against the hospice. There was substantial evidence to support his decisions. What the hospice... So, over time, you're right, and the ALJ ruled for the hospice, what I think on 50-some-odd claims. And it also strikes me, as this whole review period went through a lot of stages, there was so much change, right? We start with 365 claims, you know, one stage rejects 252 of them. Then we're at, you know... Then the next level of review realizes, oh, yeah, there are a bunch of claims in there that should be covered, too, and allows more of them to get paid. Then we hit, you know, the next level, and it strikes me that that progression, and including here with the ALJ, kind of reflects that this is a very hard and kind of malleable standard to apply, or LCD to apply to the facts, and maybe that goes more towards your friend's second argument on the limited liability point, but it strikes me that, you know, this is not so cut and dry. I mean, I think you're right, Your Honor. I think these are always going to be very fact-specific cases, and I think that's why the standard here is deferential to the ALJ, who's the fact-finder here, because it is easy to second-guess these decisions, and I think, you know, like, you know, even looking at the beneficiaries in this case, you know, the ALJ, you know, as I said earlier, the HLA found for the hospice and against the hospice, there were different scores. All these patients have different scores. There are doctor's notes that he's considering. It's always going to be an extremely fact-intensive inquiry, and I think that's why this standard is so deferential. But then what is the standard on the second part, on the limited liability? So the Sixth Circuit hasn't ruled on that. There is a Ninth Circuit case saying that it's, again, very deferential and that absent... it is arbitrary, capricious, abusive discretion or error of law. What standard should the ALJ be applying? I think the district court got it right here, where it said it comes down to reasonableness, and the ALJ has to use his best judgment, and in this case we have hospice patients who have been in stable condition for several years, and while, you know, we can understand that, it is challenging to forecast life expectancy, and there are a lot of tricky parts to hospice care, it is reasonable for a hospice provider to expect that Medicare is not going to pay it for patients who remain in stable condition year after year. So I think ultimately it's always going to be a very fact-intensive inquiry, and it's going to come down to what is reasonable in that factual scenario. Yeah, I mean, I think that's right, but as I, quite frankly, go through the facts of some of the different beneficiaries here, I find that some of the reasoning that the ALJ uses to say someone, you know, doesn't qualify is then the reason that the ALJ uses for someone else to say they do qualify, and it's not different numbers. I mean, I can look at beneficiary one has a KPS score decline from 40, and then kind of plateaus off at 30, right? So the ALJ declines beneficiary one, but uses that exact same 40 to 30 decline for beneficiary three, right? And there may be, you know, other kind of various reasons that kind of get mixed in with looking at those scores, but in terms of notice and clear notice to and what's reasonable for the hospice provider to think is okay to bill, it strikes me that that's getting quite tenuous. Well, like you said, I think there are, you know, from beneficiary to beneficiary, different factors in each, you know, and I think with respect to beneficiary one in particular, the ALJ did acknowledge that there were some factors, you know, that could have weighed, you know, in the other direction, but ultimately, this patient was stable for those time periods. So wouldn't that be reasonable then, if there were, you know, factors that were weighing in favor of thinking that this person was terminally ill? Wouldn't that weigh in favor of, I mean, even if not substantial evidence, wouldn't that weigh in favor of it being reasonable and them not having to pay back? I think just because there are maybe, you know, there is some evidence that would go in the other direction that doesn't automatically make it reasonable, and I think the problem with the hospice... Beneficiary one, there's quite a lot of evidence, right? I mean, they don't meet the weight benchmark, but, you know, the LCD doesn't say that's required, and then, to me, it looks like you had beneficiary one's mid-arm circumference also does this kind of, you know, decreasing measurements over this time. I mean, I don't disagree maybe that the ALJ can look at this all together and say, okay, well, I'm going to put this on a different side of the line, but at some point, the line drawing question, you could see, quite frankly, how reasonable minds might differ, and indeed, back to my original point, you know, the MAC says something different than the QIC, says something different than the ALJ. Like, clearly, reasonable minds are thinking differently about how you apply this LCD to these beneficiaries. I mean, this is a patient that, you know, was in hospice care for over three years. I think the ALJs... And this is, I think, why also, you know, this court, you know, isn't reviewing the evidence they know, because these are hard decisions, and that's why we have the substantial evidence standard, because, you know, as you pointed out, through the administrative process, there were some people that looked at this one way and some people looked at the other. Ultimately, we have to have, you know, someone to make a decision, and that's the ALJ. And short of, you know, and so even if this court might say, you know, I think beneficiary one should have been covered, that's not the standard we're using. We just want to see if there's substantial evidence to support that decision. And I'm 100% with you on part one. I think it's hard on part two. No, and I understand, Your Honor, and I think the problem with, you know, the hospice's argument, though, is that, you know, again, this is asking you to sort of make a de novo evidence review to determine if there's a liability limitation. It has to be more than the hospice's own employees saying that the services should have been covered. I mean, it can't be. Well, it can be the numbers, right? Like let's go to beneficiary two, right? Beneficiary two is very thin, right? But the ALJ finds that there's only 7% weight loss in three months. Okay, well, the LCD is weight loss over six months at a 10 margin. If you actually look at beneficiaries two's weight loss from February 2015 from when they came in in a six-month period, they lose 19% of their body weight, right, which is over 10, right? So should meet the LCD's requirement under part one, right? I mean, some of these things don't require you to have a medical degree to see how just facts that are in the record match up to a standard. Well, clearly I think we agree that, you know, you don't need to have a medical record. But, you know, as both sides of the brief have pointed out, I think, there's not just one factor in any of these LCDs that is conclusive. And, you know, it's possible that CMS in the future could say, in particular for the liability limitation, you know, there are some bright line factors we need to consider. But that's not the standard right now, right? I mean, how are you – it just strikes me, and I know, again, bright line and have somebody make the call on part one I get. But if you're a provider and you have clearly met part one by meeting the 10% weight threshold, how is it kind of not reasonable to think that that will be covered? I mean, especially, you know, you don't have evidence in the record that somebody's up, you know, running marathons or something. No, Your Honor. And, again, you know, for beneficiary two, the ALJ did acknowledge that there were, you know, it wasn't every factor in favor of denying coverage. But, again, this was a patient that was in the hospice's care for a long time, for several years, and in largely stable condition. And even though there's one factor maybe from the LCD that would have cut against the ALJ's decision, that doesn't mean that this court should, you know, make its own determination here and go the other direction.  When does the health care provider ever win under the second prong, the limited liability test? I think, you know, so one example might be for beneficiary – one of the dates of service for beneficiary four, the ALJ noted that that was kind of a particularly close call, and he ultimately approved coverage in that one. Well, he's already approved coverage, so. I understand, but, you know, if it was a close call where he went the other way, that would be maybe an instance where the liability limitation would kick in. The legal test, close call is probably not the language we'll use. I don't – I'm just really having – I'm struggling. If you've lost on the first test, prong one, and this is not a bright line situation, like a machine you can or can't use, it's just a judgment. You've had a doctor, obviously, at the health care facility, say this is necessary medical treatment. The ALJ is free to disagree, but when – if it's really close? I mean, it is hard to say, I think, Your Honor. I think that's why – I think it's always going to be a very fact-intensive inquiry. I think it's hard to draw a general principle, you know, from a specific set of facts here. But I just don't think it can't be that – Well, any time you're before the ALJ, you have physician certification from the hospice saying that we needed this care. But it just can't be that the hospice itself can have its employees say, yes, this care was necessary, therefore Medicare has to pay us. I don't think that is at all the framework that's been established here.  That's the other side of the spectrum, I guess. I understand they don't always win. Sure. I'm sorry, but I don't know when the government doesn't always win under your theory. No, I understand. I mean, I don't have like a good hypothetical for you here today where it would be a case where the hospice would win. I just think that it's going to be, you know, a unique set of facts every time, and it's ultimately going to come down to was that ALJ's decision reasonable. And here I think it was.  Moving on, just for... I wanted to just talk about how the hospice tries to paint the ALJ as someone with an agenda who has preferred conclusions. They characterize the ALJ as an adversary. I think that has no support in the record and just does not make any sense. The ALJ ruled for the hospice in some instances, ruled against the hospice in others. I don't think that argument holds up. And then going back to the administrative framework that was established here by Congress and HHS, that makes the ALJ the fact finder. The ALJ is not a doctor, but the framework requires the ALJ's rule on medical issues, such as whether a hospice should be covered by Medicare. And this is no different from a judge or a jury. It happens in all sorts of legal contexts, in a malpractice case, in a False Claims Act case. This is simply... it's not playing doctor. It's just performing the role that was assigned to him. And the hospice has put a lot of weight that it has uncontroverted evidence here. It's got physician certifications. It's got Dr. Gregory's testimony. But just because the hospice has its own doctors saying that this care was necessary doesn't make the evidence uncontroverted. Obviously, other people in the Medicare appeals process disagree with that, and that's not the framework that has been established here. The burden is on the hospice to prove that this care was covered or should have been covered under Medicare. And the secretary is not required. If Congress had wanted the secretary to have to put forth evidence in these situations, it could have done so. It has not. But again, it cannot be the case that a hospice can satisfy its burden just by showing that its employees said it should have gotten that. So can I circle back? I know that you just spend a lot of time on this limit to liability, but I think it's a thing that probably all three of us are grappling with here. And I just am having a hard time figuring out what it is that we're supposed to rely on to say that the hospice reasonably should have known that this would not be covered when we've got a mixed record like this. I think big picture, that provision is really trying to make sure that people don't game the system, so that people aren't saying that someone is eligible for services just so that they can get money. These are people who receive services who had some indicators. They were terminal, who had indicators that they required these services. So when should the hospice be on the hook for like, hey, here's the thing, this, this, and this shows that you should have known that this is not a reimbursable. I don't think there's any one thing, Judge. I don't think there's any... There's some combination of things. Yeah, I think it's just... Judge Riedler, I think, called the LCD kind of like a multi-factor test earlier, I think. And I think it is kind of like a bit of a balancing test that the ALJ has to do. He has to look at all these factors that are set forth in there and make his best decision. And that's why I think the right standard to apply here would be that very deferential, that highly deferential standard from the maximum circuit, 9th Circuit case, maximum court 9th Circuit case. Have any other courts weighed in on a standard here? I mean, I think we had some court call this like kind of a good faith, safe harbor. Like what, I mean, what else should we look for for guidance on? I mean, I think that is the only circuit court, I believe, that has ruled on this issue, Your Honor. Okay. Okay, well, thank you very much. Thank you, Your Honors. And now we'll hear rebuttal. Appreciate the time, Your Honor. First, a point of clarification. There is a case from the 10th Circuit that interprets the limitation on liability provision. It is called Caring Hearts. It was authored by then-Judge Gorsuch. Here, the ALJ, in discussing the limitation on liability issue, does not say the hospice was unreasonable. He doesn't say the hospice was negligent. He doesn't say the hospice acted in bad faith. And he doesn't say that the hospice failed to submit the required documentation under the hospice regulations. At least in this case, that is enough to decide the limitation on liability issue in our favor. I understand the desire to have a broader test. I'm not sure that this case gives us the opportunity to craft that. But at minimum, you can say that given all of those facts and given that the ALJ really did not explain himself and cite any evidence or base his decision on that issue on any evidence, it's enough to reverse him. Patients can and do remain on hospice for more than three years. President Carter was on hospice for three years before his passing. The issue is not whether, in hindsight, a patient has spent three years or more in hospice. The issue is at the time of certification and recertification. These hospices have to recertify on a rolling basis. Is the person still in the condition that we expect them to die within six months? And the government never says that our patients, for example, were not properly certified at the beginning, but then at maybe year 1.5 became ineligible. It's just a bold statement at the very end that because it was three years, it had to be unreasonable. There's no evidence to support that. And critically, though the district court ruled on limitation on liability using that reasoning, the ALJ never did. That district court reasoning about reasonableness is a classic post-hoc explanation that an ALJ never used, and so at minimum you have to reject that for that reason. Our review is of the ALJ. That's right. Yes. Yes. And all I meant there is the idea that because we've been on for three years or more and that we're stabilizing, the hospice regulations explicitly consider the idea that you might be on hospice for more than six months and you still get benefits. You might stabilize temporarily. You might even have the impression of stabilizing when, in fact, you continue to decline. Those are all of the classic types of things that the hospice physicians are in the best position to evaluate exercising their clinical judgment. We ask the court to reverse and to reverse without remand. Thank you. Okay. Thank you. Very interesting case. We appreciate the arguments from both sides. The case will be submitted, and I think we can adjourn court.